## R. V. OAR AND WIFE v. MYRTIE DAVIS ET AL.

No. 2269. Decided December 18, 1912.

**1.—Assignment of Error—Fundamental Error.**

What will constitute fundamental error, such as, being readily seen, lies at the base and foundation of the proceeding and affects the judgment necessarily, and hence may be ground for reversal though not assigned as such on appeal, considered and explained. (Pp. 483-487.)

**2.—Same—Case Stated.**

In an action by children of decedent against his wife and her second husband, to set aside, on the ground of fraud and mistake, their conveyance to the latter of real property, the separate estate of their father, defendants having asserted the validity of the deed and the rights of the mother in the property as homestead, but urging no claim as to her inheritance of a one-third interest for life, the failure of the court to protect such interest in the decree in plaintiffs' favor setting aside the conveyance and recovering the property from defendants was not such fundamental error as could be considered on assignment thereof in the Supreme Court where it was not assigned as error on appeal. (Pp. 481-487.)

**3.—Same—Cases Distinguished.**

Pendleton v. Colville, 49 Texas, 526; Dean v. Lyons, 47 Texas, 20; Fuqua v. Pabst Brew. Co., 90 Texas, 301; distinguished from this case. (Pp. 484-486.)

**4.—Deed—Fraud—Married Woman's Acknowledgment—Contradicting Notary's Certificate.**

The action being to set aside a deed on the ground that by fraud of the grantee it was drawn to embrace land not intended to be conveyed and was made in ignorance that it embraced such land, the notary's certificate that the instrument was explained to a married woman acknowledging it was not conclusive of her knowledge of its contents, nor evidence of such knowledge. She could show, notwithstanding the certificate, that she did not know that it embraced the land in question. (Pp. 487, 488.)

**5.—Same—Cases Distinguished.**

The rule that the notary's certificate of a married woman's acknowledgment is conclusive except in cases of fraud or imposition on the part of the officer applies only to cases where the question is as to due execution of the instrument. Where the execution of it is admitted, but the deed is sought to be set aside for fraud of the grantee, the certificate that the deed was explained may be contradicted. Hartley v. Frosch, 6 Texas, 208, and other cases distinguished. (Pp. 487, 488.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

Myrtie Davis and others sued Oar and wife and recovered judgment. Defendants appealed and on affirmance obtained writ of error.

*J. P. Yates* and *T. D. Starnes,* for plaintiffs in error.—The Court of Civil Appeals erred in not reversing or reforming the judgment of the District Court ordering partition of the land in controversy between the plaintiffs and the intervener, because the judgment divests the defendant, Mrs. M. A. Oar, of her one-third life interest in said land. Rev. Stats., art. 1689; Gautier v. Franklin, 1 Texas, 732; Long v. Anderson, 4 Texas, 425; Pettus v. Perry, 4 Texas, 488; Coles v. Kelley, 2 Texas, 542; Ogden v. Lund, 11 Texas, 685; Fugua v. Pabst Brew. Co., 90 Texas, 298, 38 S. W., 29; Hollingsworth v. Holshausen, 17 Texas, 41; Wetmore v. Woodhouse, 10 Texas, 33; Harmon v. Callahan, 35 S. W., 705; Hanner v. Summerhill, 6 Texas Civ. App., 764, 26 S. W., 906; Beckman v. Frost, 9 Am. Dec., 246.

The second amended petition failing to show any device or fraud practiced by any one to prevent the plaintiffs reading the deeds in question, said deeds are good and unavoidable. Gibson v. Brown, 24 S. W., 573; Tomlinson v. Watkins, 77 Ala., 399; Dawson v. Burriss, 73 Ala., 111; VanSickle v. Town, 53 Iowa, 259, 5 N. W., 145; McHenry v. Day, 13 Iowa, 445, 81 Am. Dec., 438; Gulf, etc., Ry. Co. v. Dwyer, 75 Texas, 582.

The trial amendment alleges no act or other matter sufficient to constitute fraud in the procurement of the certificates of acknowledgment to the deeds of Myrtie Davis and husband and Ella Davis and husband and the certificates of said notary public are conclusive of the facts stated therein, and said trial amendment fails to allege any fact or circumstance that would justify the admission of evidence contradicting the facts contained in said certificates. Rev. Stats., art. 635; Hartley v. Frosch, 6 Texas, 208; Brand v. Colorado Salt Co., 30 Texas Civ. App., 458, 70 S. W., 578; Gibson v. Brown, 24 S. W., 574; Fresberg v. DeLamar, 7 Texas Civ. App., 263, 27 S. W., 151; Hitz v. Jenks, 123 U. S., 297; Wheelock v. Cavitt, 91 Texas, 679, 45 S. W., 796; 1 Cyc., 619.

A notary's certificate of acknowledgment to the deed of a married woman, certifying that she has by said officer been examined privily and apart from her husband and that such deed was fully explained to her by such officer, is conclusive of these facts, and they cannot be contradicted or denied without allegation of fraud in the procurement of the certificate itself. Same authorities.

Evidence offered to impeach a certificate of acknowledgment to a deed must fully and clearly satisfy the court that the certificate of the officer is both false and fraudulent, and even a preponderance of evidence less than sufficient to establish a moral certainty to that effect is not sufficient. Same authorities. Also: Atkinson v. Reed, 49 S. W., 260; Kerr v. Russell, 69 Ill., 666; Russell v. Baptist Theol. Union, 73 Ill., 337; Crane v. Crane, 81 Ill., 165; McPherson v. Sanborn, 88 Ill., 150; Tunison v. Chamberlain, 88 Ill., 378; Blackman v.

Hawks, 89 Ill., 512; Young v. Duvall, 109 U. S., 573; Ford v. Ford, Amer. & Eng. Annotated Cases, 245, and note commencing at p. 249.

*Sherrill, Mulkey & Hamilton,* for appellees.—The evidence shows conclusively that the deeds executed by the defendants were procured by fraud and imposition, and there was no error in refusing the peremptory instruction to find for defendants. Westbrook v. Jeffers, 33 Texas, 86; Friebery v. DeLamar, 7 Texas Civ. App., 263, 27 S. W., 151; Pierce v. Fort, 60 Texas, 469; Shelby v. Burtes, 18 Texas, 645; Wiley v. Prince, 21 Texas, 637; Britling v. Chester, 88 Texas, 586; Webb v. Burney, 70 Texas, 322; Waltee v. Weaver, 57 Texas, 571; Henderson v. Terry, 62 Texas, 284; Darlington's Appeal, 86 Pa. St., 512, 27 Am. Rep., 726; Bank v. Copeland, 18 Md., 305, 81 Am. Dec., 597; Gray v. Shelby, 83 Texas, 405; Wheelock v. Cavitt, 91 Texas, 679.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This was a suit begun in the District Court of Hunt County by J. C. Davis and Myrtie and Ella Davis joined by their husbands, Lee and J. F. Davis, against R. V. Oar and wife, M. A. Oar, to cancel so much of three deeds as conveyed a certain tract of 100 acres of land out of the Donelly survey, in Hunt County, said deeds having been executed by plaintiffs to the defendant, R. V. Oar. These deeds conveyed other lands against which no relief is sought. Earl C. Davis intervened, claiming an interest in the property the subject of litigation, and about his claim there was no controversy.

The plaintiffs, J. C. Myrtie and Ella Davis, and the intervener, Earl Davis, were the children of the defendant, Mrs. M. A. Oar, and her former husband, J. A. Davis. At the time of the death of J. A. Davis, the father of plaintiffs and husband of the defendant, Mrs. M. A. Oar, he held in his name four tracts of land, 100 acres in the Sallie Owen survey in Hunt County, 50 acres in the Elam survey in Hunt County, 110 acres in the John Mason survey in Hunt and Hopkins Counties, and 100 acres in the Donelly survey in Hunt County. The three first tracts mentioned were the community property of J. A. Davis, deceased, and his surviving wife, Mrs. M. A. Oar; the last tract mentioned, which is the subject of this controversy, was the separate property of J. A. Davis, deceased, the father of plaintiffs and the intervener.

On November 26, 1904, J. C. Davis, and Myrtie and Ella Davis joined by their husbands, Lee and J. F. Davis, executed deeds to R. V. Oar conveying each their one-eighth interest in the three tracts of land, the community property of J. A. Davis, deceased, and his surviving wife, Mrs. M. A. Oar, and also their one-fourth interest each in the 100 acres out of the Donelly survey, that was separate property of their deceased father, J. A. Davis. The 100 acres of land in controversy, the separate property of J. A. Davis, deceased, was located contiguous to the 100 acres out of the Sallie Owen survey, and the two tracts thus contiguous were occupied by J. A. Davis and his wife during his life time, and after his death by the defendants, R. V. and M. A. Oar as their homestead.

The defendants in 1906, moved from said lands so occupied as their

homestead at Cumby, where they purchased a home and where they were residing at the time of this suit.

Plaintiffs seek to cancel said three deeds in so far as they convey their interest in the 100 acres of land out of the Donelly survey, but not otherwise. The ground upon which plaintiffs seek to cancel said deeds in so far as they convey their interest in the 100 acres, the separate property of their father, is that some time prior to November, 1904, the defendant, R. V. Oar, proposed to buy the respective interests of plaintiffs in the three tracts of land that formed a part of the community estate of their father and mother, and after some trading an agreement was reached whereby plaintiffs agreed to sell their respective interests in said three tracts of land for the stipulated price of $550.00 to be paid each of them by the defendant, R. V. Oar, their step-father, aggregating the sum of $1,650.00. They did not agree to sell the defendant, Oar, any part of their interest in the 100 acres of land in controversy, and it was understood by all parties that the 100 acres in controversy, which was known as the home place, was not to be conveyed. The defendant, R. V. Oar, agreed to have the deeds drawn in accordance with the agreement and understanding of the parties as above indicated, and plaintiffs having been reared by said defendant from their early childhood reposed great confidence in their said step-father and did not think he would impose upon them or attempt to cheat and defraud them out of any of their property. By reason of their close relationship to the defendant, R. V. Oar, and confidence in him they did not read or have read to them the deed before its execution and delivery, and that said Oar for the purpose of cheating and defrauding plaintiff out of the land in controversy, embraced said 100 acres in the deed and procured a notary to take the acknowledgment, and said notary failed to explain the same to plaintiff, or to any one of them, and plaintiff did not know that the land in controversy was embraced in the description of the lands in the deeds. But that the defendant, Oar, did know that said land was included in the description of the lands in said deeds and accepted same with such knowledge. That no consideration was paid by said Oar for said land, but he paid only the amount agreed upon for the three tracts they agreed to sell him, which amount was adequate compensation for plaintiffs' interest in those tracts, but grossly inadequate as a consideration for all the land embraced in the deeds. Plaintiffs did not discover that the land in controversy was included in said deed until in the year 1908, when they learned through their mother that defendant, R. V. Oar, was claiming the land in his own right. Soon after this discovery suit was brought to cancel the deeds in so far as they conveyed the 100 acres in question.

Abandonment of the land in controversy as a homestead was alleged, and there was a prayer that the deeds ''described be canceled and held for naught, in so far as they attempt to convey the interest of plaintiffs in the said 100 acres of the Donelly survey, and that plaintiffs have judgment against R. V. Oar and M. A. Oar for their one-fourth interest each in said land, and that same be partitioned.''

Defendants answered by general demurrer, special exceptions, a general denial, plea of homestead, and a community interest in said

100 acres of land to the extent of certain improvements placed thereon since their intermarriage. They pleaded specially that the deeds were executed by plaintiff with full knowledge that they contained the 100 acres of land in controversy, and that the plaintiffs, Ella and Myrtie Davis, were married women, and that the notary taking their acknowledgments fully explained said deeds to them as required by law. That plaintiffs either read or had read to them said deeds, and that they are estopped from claiming the land sued for or any part thereof.

The court overruled defendants' general demurrer to plaintiffs' petition, but sustained the second special exception to said petition, which exception was in substance that because the plaintiffs, Myrtie and Ella Davis, being married women, conveying their separate property, had the deeds fully explained to them by the notary, as required by law, and because said petition failed to show that the certificate of the notary certifying these facts was obtained by fraud, and that the certificate of the notary was conclusive of the facts therein certified. This objection was met by a supplemental petition. The issues of fraud in the procurement of the deed, and of homestead, were submitted to the jury, which returned a verdict for plaintiffs on both issues, and judgment for plaintiffs and intervener for the land in suit, and its partition was duly entered.

The first question raised in the application for writ of error is one of practice. The assignment presenting this question was not made in the court below, or in the Court of Civil Appeals, until upon motion for rehearing, and is as follows:

"The Court of Civil Appeals erred in not reversing or reforming the judgment of the District Court, ordering partition of the land in controversy between the plaintiffs and intervener, because the judgment divested the defendant, Mrs. M. A. Oar, of her one-third life estate in said land."

The Court of Civil Appeals refused to consider the assignment, and that court's action, as well as that of this court here exercised, depend in a measure upon the issue whether or not the assignment presents "an error of law, apparent upon the face of the record." Such is the contention of plaintiffs in error, and upon the face of the application we were of the opinion, when the writ was granted, that such an error appeared. However, upon a more careful examination of the entire record we have concluded that we were mistaken in our first impression.

The adjudications of this court, have given to the expression, "an error of law, apparent upon the face of the record," the meaning of such error as is fundamental in character or one determining a question upon which the very right of the case depends, or such an error as being readily seen lies at the base and foundation of the proceeding and necessarily affects the judgment. Wilson v. Johnson, 94 Texas, 276; Houston Oil Co. of Texas v. Kimball, 103 Texas, 103.

Unless the error presented for the first time in a motion for a rehearing in the Court of Civil Appeals, or in the application for writ of error in the Supreme Court for the first time, is such an error as meets the provision above quoted as its meaning has been construed

to be as above stated, it will be treated as waived and cannot be considered:

In announcing the rule and construing the meaning of Articles 1607 and 1612 of the Revised Statutes of 1911, being Articles 1014 and 1018 of the Revised Statutes of 1895, relating to assignments of error, in the case of Wilson v. Johnson, above cited, Judge Gaines said: "Since every error must in one sense appear upon the face of the transcript, it is difficult to tell what is meant by this language, but we incline to think it intended to signify a prominent error, either fundamental in character or one determining a question upon which the very right of the case depends."

One of the latest utterances upon this subject will be found in the case of the Houston Oil Company of Texas v. Kimball, 103 Texas, 103, in which Judge Brown gives a clear and more definite construction of the meaning of these articles of the statute above referred to in the following language: "Webster defines the word, 'apparent,' thus: 'clear; manifest to the understanding; plain; evident; obvious; appearing to the eye or mind.' This does not mean that an error which can be ascertained by looking into the record and considering the evidence may be considered without an assignment, for that would include every error that can be considered at all. Nothing can be considered as an error which cannot be made apparent by an examination of the record, therefore, the language of the statute must be given that construction which will make it consistent with its requirements in other respects. The language, 'apparent upon the face of the record,' indicates that it is to be seen upon looking at the face of the record, that is, the assignment itself, the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily."

It is evident that the meaning of the two articles of the Revised Statutes of 1911, 1607 and 1612, and Articles 1014 and 1018 of the Revised Statutes of 1895, when taken one in connection with the other, which must be done, is that all errors of law which are not "apparent upon the face of the record" must be presented by assignments of error distinctly specifying the grounds on which a reliance is had for a revision of such error, and a failure to make such assignment of error must be treated as a waiver thereof.

It seems to us there is no more accurate and comprehensive summing up of the whole matter than is contained in the last sentence in the excerpt taken from the opinion of Judge Brown in the Houston Oil case cited above, "that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily."

At the risk of being thought to have added perfume to the violet or color to the rose we suggest that the error contemplated by the provision of the law under discussion was intended such manifest error as when removed destroys the foundation of the judgment.

In the case of Pendleton v. Colville, 49 Texas, 526, a number of de-

fendants were non-residents, and were cited by publication, the suit being for land, and upon the day of trial an amendment was filed setting up a new cause of action and judgment was founded on the matters alleged in the amended pleading, without notice to the parties actual or constructive. In reversing that judgment the court said: "The assignment of errors fail to specify this as a ground of error, but it is one which is apparent on the record, and is so fundamental that the court will act upon it though not assigned."

It is evident that the error of law there considered lay at the base and foundation of the proceeding and affected the judgment necessarily, and destroyed its foundation.

In the case of Dean v. Lyons, 47 Texas, 20, the suit was for a tract of land in the form of trespass to try title. The issue made by the pleading was whether or not one John P. Lyons had conveyed the land in question to his son, John T. Lyons, through whom plaintiffs in that case claimed, "the court, however, after charging upon this issue, presenting to the jury other and different issues, that were not embraced in the pleadings of the parties, and the jury found upon them, and upon their finding the court proceeded to render a further judgment, that the land was bound for the support of John T. and Caroline Lyons to the extent of $175.00 annually each, during their respective lives, to be paid in semi-annual payments to each of them; that the rental value of the land was of the value of $350.00; that if the land failed to produce said amounts thus to be paid to them, the deficit should be supplied by a sale of so much of the land as might be necessary for that support." In reversing that case upon the ground of fundamental error Chief Justice Roberts said: "There was no pleading in the case designed to produce, or capable of producing, these results, nor was the evidence adduced upon the trial sufficient to establish such results, had it been offered for such purpose, which was certainly not justified by the pleading." So in that case it may be said the error of law considered by the court lay at the base and foundation of the proceeding and affected the judgment necessarily and destroyed its foundation.

In the case of Fuqua v. Pabst Brewing Co., 90 Texas, 301, the question presented arose out of a general demurrer, which in effect challenged the validity of a contract set out in the petition and upon which the cause of action was based. The Court of Civil Appeals considered the question in the absence of an assignment, and their right to do so was made the basis of an assignment in this court. In rendering the decision of the court in that case Judge Denman said: "We are of opinion that this objection is not well taken, (1) because the general demurrer urged in the trial court necessarily raised the question of the validity of the contract sued on, it being the settled practice to disregard the reason given in an assignment and to treat the same as if such reasons had been omitted: and (2) because if the contract be controlled by and is violative of said statute, the same is thereby declared to be void (Texas P. Coal Co. v. Lawson, 89 Texas.), and it was the duty of the Court of Civil Appeals, notwithstanding the absence of an assignment, to set aside the judgment rendered

thereon, as its rendition was 'an error in law    *    *    *    apparent on the face of the record.' ''

This is another instance where the error lay at the base and foundation of the proceeding and affected the judgment necessarily, and destroyed its foundation.

We think no case will be found decided by this court where the assignment was presented for the first time in the Appellate Court and considered upon the ground of "an error of law, apparent on the face of the record," that is not based upon the ground that such error goes to the foundation of the cause of action upon which the judgment is based and thereby destroys the validity of such judgment.

Let us determine whether the error here complained of is one that meets the requirement of the law as it has been construed by this court as above indicated. It must be conceded that neither by pleadings of the parties nor by any testimony presented in the court below was the subject of Mrs. Oar's one-third life interest in the land in controversy made an issue. She joined her husband in his claim for the entire interest of plaintiffs in the land under the deeds from plaintiffs, and in the event that the land could not be held under said deeds, then the right in the whole tract of land was claimed by virtue of the homestead laws. Plaintiffs and intervener in their prayer for relief asked judgment against the defendants for the entire tract of land and its partition.

It was thus well said by Judge Talbot in his opinion overruling the motion for rehearing: "Not having pleaded this matter, or in any way invoked the aid or action of the court below to protect the interest of Mrs. Oar in a life estate of one-third of the land, appellants cannot be heard to complain for the first time in the manner attempted here. Had an issue been made in the trial court, as to whether or not Mrs. Oar was entitled to have set apart to her for and during her life, one-third of the land in controversy, in the event plaintiffs should recover, it might have been shown, if such was the fact, that Mrs. Oar had, by deed or otherwise, parted with her life estate in said land."

If the error complained of is one of law it neither lies at the base and foundation of plaintiffs' cause of action nor is it such an error of law as is apparent upon the face of the record. To determine whether it be an error of law at all depends upon the issue of title made by the pleadings and the evidence adduced to sustain or deny the respective rights of the parties. In the absence of any claim on the part of Mrs. Oar in her pleadings, or in the presentation of her claim to any part of the land in controversy, other than that claimed through the deed to her husband and the right of the homestead, which claims were litigated, the court might well presume that if she was entitled to a one-third life interest in the land she had waived such claim. Whether this view be sound or not, there is no phase of the law under which we can treat the supposed error of law as one of a fundamental character. As suggested by Judge Talbot if a claim had been made by Mrs. Oar to the land by virtue of inheritance, plaintiffs might have shown by reason of some conveyance

or other arrangement she had parted with such interest. We therefore think the Court of Civil Appeals was right under the circumstances in refusing to consider the assignment of error.

In their second, third and four assignments of error in this court, plaintiffs in error seek to raise the question whether or not the certificate of an officer taking the acknowledgment of a married woman to a deed conveying land, her separate property, may be impeached by an allegation and proof that such instrument was not in fact explained to her in contradiction to such certificate that it was so explained. This question was first raised in the trial court when the defendants presented a special exception to plaintiffs' petition that it was defective in not alleging that the deeds sought to be canceled were not explained to those plaintiffs who were married women, and that such failure on the part of the notary to so explain such deeds to the grantors who were married women was the result of fraud or imposition on the part of the notary. This special exception was sustained and plaintiffs in order to meet the objection filed a supplemental petition in which fraud was alleged, and the question presented by plaintiffs in error is as to the sufficiency of the allegation in the supplemental petition to constitute fraud on the part of the notary.

We think it unnecessary to discuss the question as to whether or not the allegations of the supplemental petition were sufficient to constitute fraud on the part of the notary in failing to explain the deeds of conveyance to the grantors who were married women, for the reason the question may be more appropriately settled by determining whether or not the trial court committed error in the first place by sustaining the special exception that produced the necessity of the allegations in the supplemental petition, to meet the views of the trial judge. If it was error to sustain the special exception to plaintiffs' petition, then it becomes immaterial that the trial court refused to sustain special exceptions to the allegations of fraud on the part of the notary as contained in the supplemental petition.

It is the well settled rule of law in this State that the certificate of the officer taking the acknowledgment of a married woman is conclusive of the facts therein stated, unless fraud or imposition is alleged. Hartley v. Frosch, 6 Texas, 208; Brand v. Colorado Salt Co., 30 Texas Civ. App., 458, 70 S. W., 578; Waltee v. Weaver, 57 Texas, 571; 1 Cyc., 619. But while the rule above stated is well and definitely settled in this State, it has application only in those cases where the proper execution of the deed itself is questioned. In the case at bar the proper execution of the deeds is not questioned, or in any manner made an issue in the cause of action as stated in the pleadings first excepted to. The trial court erred in sustaining the special exception addressed to such pleading because it failed to allege that the deeds were not explained to the grantors, who were married women, by the notary, and that such failure was the result of fraud on the part of the notary. The action was to cancel certain deeds in so far as they conveyed a certain tract of 100 acres of land that defendant, Oar, fraudulently had inserted in the deeds executed by plaintiffs. In no manner did this action call into question the

proper execution of the deeds. That was admitted, but it was alleged that plaintiffs did not sell or agree to sell the 100 acres of land in controversy, and that plaintiffs on account of their close relationship to the defendant, R. V. Oar, who was their step-father and who having reared them from early childhood, stood in relation to them as parent, and in whom they reposed great confidence, did not read the deeds or have them read or explained and that said defendant took advantage of their confidence and knowingly had the description of the land in controversy embraced in said deeds for the purpose of defrauding plaintiffs.

It cannot be said that when a married woman has thus been imposed upon she is estopped to deny her want of knowledge of the fact that the deed embraced property she never sold or contracted to sell the grantee. In such a proceeding the certificate of the notary is not competent as testimony to show that the grantor knew the land claimed not to have been sold was in fact embraced in the deed. That fact might be shown by the testimony of the notary himself, but his statement to one state of fact would not preclude the grantor from denying the correctness of such statement.

This suit, not in any manner involving the validity of the execution of the deeds sought to be canceled, did not and could. not permit the application of the doctrine that the certificate of the officer taking the acknowledgment speaks verity and is non-assailable as to the facts it certifies, in the absence of allegations of fraud or imposition on the part of the notary. It follows, therefore, that the trial court erred in sustaining the special exception urged by defendants to plaintiffs' second amended original petition, and that it did not err in refusing to sustain the special exceptions urged by defendants to the first supplemental petition.

We think all other questions presented in the petition for writ of error have been properly disposed of by the Court of Civil Appeals, and there is no error in the judgment of that court. The judgment of the Court of Civil Appeals is accordingly affirmed.

*Affirmed.*